

FILED
SEP 2 6 2013
CLIFFORD J. PROUD
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (314) 322-9382 | Case No. 13-M-6052-CJP<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jarad Harper, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (314) 322-9382 (the "**TARGET TELEPHONE**"), whose service provider is Sprint, a wireless telephone service provider headquartered at 6550 Sprint Parkway, Overland Park, Kansas. The subscriber of the **TARGET TELEPHONE** is unknown, but the **TARGET TELEPHONE** is utilized by **Jose Ivan MEJIA-Chavez,** hereinafter referred to as **MEJIA-Chavez.** The **TARGET TELEPHONE** is further described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), currently assigned to the DEA Fairview Heights Resident Office. I have been a Special Agent with DEA for 9 years, and was a Kirkwood Police Officer for approximately 8 ½ years, prior to becoming a Special Agent with DEA. I have participated in numerous narcotics investigations involving the transportation of controlled substances and/or of the proceeds/payments from controlled substance sales during my tenure with DEA. I have participated in numerous drug investigations, which have resulted in the seizure of methamphetamine, ecstasy, cocaine, "crack" cocaine,

marijuana, heroin, and other controlled substances. I am familiar with and have utilized normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of undercover agents and the use of court-authorized wire intercepts.

3. The affiant has applied for and been granted numerous Precision Location Information orders similar to this order which have aided in identifying individuals, arresting fugitives, and seizing illegal drugs and drug proceeds.

4. The facts in this affidavit come from the affiant's personal observations, the affiant's training and experience, and information obtained from other agents, witnesses, and a Source of Information (referred to as SOI). This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of the affiant's knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 (the "**TARGET OFFENSES**") have been committed, are being committed, and will be committed by the user of the **TARGET TELEPHONE**, and other known and unknown persons. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the arrest of an individual indicted for said offenses.

### PROBABLE CAUSE

6. For the reasons set out in this affidavit, there is probable cause to believe that the **TARGET OFFENSES** have been committed by **MEJIA-Chavez**. Further, there is probable cause to believe the user of the **TARGET TELEPHONE, MEJIA-Chavez,** is involved in the ongoing commission of the **TARGET OFFENSES.**

2

## BACKGROUND OF INVESTIGATION

7. Members of the investigative team and I are investigating **MEJIA-Chavez** for violations of Title 21, United States Code, Section(s) 841(a)(1), 846, and 853, as well as Title 18, United States Code, Section 1952 (a)(3) and Title 8, United States Code, Sections 1325(a) and 1326(a). The investigation has shown that **MEJIA-Chavez** uses the **TARGET TELEPHONE**.

8. Your affiant further states that there is probable cause to believe that signaling information, including cell site information, precision location information, and factory installed GPS information will lead to evidence of the aforementioned criminal offenses, the location and arrest of **MEJIA-Chavez,** and to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

9. On June 26, 2012, a Criminal Complaint alleging that **MEJIA-Chavez** committed the offense of Unlawful Reentry following Deportation, in violation of Title 8, United States Code, Section 1326(a) was filed in United States District Court in the Southern District of Illinois. A warrant for the arrest of **MEJIA-Chavez**, was issued by the Honorable Clifford J. Proud, United States Magistrate Judge, on June 29, 2012.

10. On August 22, 2012, **MEJIA-Chavez** was indicted in the Southern District of Illinois for his involvement in a multi-jurisdictional, Title III, cocaine conspiracy [12-CR-30242-DRH]. Based on numerous wire intercepts, multiple surveillances, confidential sources, sources of information, proffer interviews, Post-Miranda interviews, and the ongoing investigation, agents have learned that between approximately 2010 and 2012, **MEJIA-Chavez** was responsible for receiving kilogram quantities of cocaine from Salt Lake City, UT, Source of Supply, Jesus Orlando MENDEZ-Velasquez. This investigation has revealed that **MEJIA-**

**Chavez** was responsible for breaking down the kilograms of cocaine for redistribution in the St. Louis Metropolitan and Metro East, Illinois, areas. The federal Grand Jury charged **MEJIA-Chavez** and others in Count 1 of the indictment for Conspiracy to Distribute and Possess with the intent to Distribute Cocaine, charged **MEJIA-Chavez** in Count 3 of the indictment for Illegal Re-Entry after Deportation, and in Count 10 of the indictment for Interstate Travel in Support of Racketeering. **MEJIA-Chavez** was also named in a forfeiture allegation contained in the indictment.

11. In the latter part of June of 2012, agents learned from wire intercepts that **MEJIA-Chavez** fled to Mexico to avoid federal prosecution in this matter, and still remains a fugitive. Shortly after the previously mentioned indictment in August of 2012, TFO Jose Cerna located a Mexico phone number for **MEJIA-Chavez** and left a message for him to call back. **MEJIA-Chavez** called back approximately a week later and told TFO Cerna he was in Mexico. TFO Cerna explained to **MEJIA-Chavez** that agents needed to talk to him regarding this cocaine conspiracy, but **MEJIA-Chavez** told TFO Cerna agents would have to come to Mexico to find him. TFO Cerna told **MEJIA-Chavez** he had a child and a wife, Maria Elena RICO-Lopez, a co-defendant in this conspiracy that remained in the St. Louis area. **MEJIA-Chavez** said he was not concerned about his child or wife in St. Louis, because he had another wife and child in Mexico.

12. On September 5, 2013, agents from the DEA Fairview Heights Resident Office arrested Omar ESTRADA-Zavala, hereinafter referred to as ESTRADA-Zavala, for conspiracy to distribute marijuana in the Eastern District of Missouri. ESTRADA-Zavala immediately cooperated with agents and is continuing to do so for consideration for his pending marijuana

4

charges. Shortly after ESTRADA-Zavala's arrest, TFO Cerna and SA Jeremiah Henning conducted a Post-Miranda interview of ESTRADA-Zavala. During the Post-Miranda interview, ESTRADA-Zavala advised he was familiar with **MEJIA-Chavez** and advised agents **MEJIA-Chavez** was in the St. Louis Metropolitan area. Agents showed ESTRADA-Zavala a photograph of **MEJIA-Chavez**, and he positively identified **MEJIA-Chavez** as the subject he has known for several years. ESTRADA-Zavala went on to say that he heard **MEJIA-Chavez** was in the St. Louis area trying to coordinate the delivery of an unknown amount of methamphetamine from Houston, TX, to the St. Louis area for further distribution. Agents advised ESTRADA-Zavala to attempt to locate the whereabouts of **MEJIA-Chavez** and to advise agents if he were able to do so.

13. On September 25, 2013, agents learned from ESTRADA-Zavala that **MEJIA-Chavez** was living in the Warson Oak Apartments, located at 1915 North Warson Road, St. Louis, MO, 63114. ESTRADA-Zavala said he had observed **MEJIA-Chavez** drinking beer with other subjects outside the Warson Oak Apartment complex over the weekend of September 21 and 22, 2013. Furthermore, ESTRADA-Zavala said he also observed that **MEJIA-Chavez** was operating a red colored Hyundai, bearing Illinois license plates N740535. Agents learned this license plate is registered to Victor M. Pintor, who agents believe to be Victor PINTOR-Murillo, who is the brother-in-law of **MEJIA-Chavez**. Victor PINTOR-Murillo is believed to be an undocumented alien, who previously resided with **MEJIA-Chavez** and Maria Elena RICO-Lopez at 2831 ½ Magnolia, St. Louis, MO. Based on numerous wire intercepts, multiple surveillances, GPS tracking information, interviews, and the ongoing investigation itself, agents leaned that RICO-LOPEZ and PINTOR-Murillo were cocaine and money couriers for **MEJIA-Chavez**. PINTOR-Murillo is also a fugitive at this time for an immigration violation previously

5

indicted in the Southern District of Illinois during the same time period in which **MEJIA-Chavez** was indicted.

14. With the information from ESTRADA-Zavala, on September 25, 2013, at approximately 4:00 p.m. agents arrived at the Warson Oak Apartment complex in an attempt to locate **MEJIA-Chavez**. SA Henning was conducting foot surveillance in the area and observed three Hispanic males walking towards the rear entrance into the apartment complex. At this time, SA Henning observed that one of the subjects very closely resembled the physical characteristics of **MEJIA-Chavez**. SA Henning attempted to locate what apartment the above subjects entered, which met with negative results. After SA Henning observed the subject, whom he believed to be **MEJIA-Chavez**, a few minutes elapsed when the same subject leaned over a second-floor rail and began staring at SA Henning. SA Henning said he and **MEJIA-Chavez** made eye contact with one another at this time. Agents were very reluctant to conduct any further foot or mobile surveillance in the area with the fear of being compromised by **MEJIA-Chavez**.

15. On September 26, 2013, ESTRADA-Zavala advised agents that he observed **MEJIA-Chavez** at a Laundromat off of Midland Avenue in St. Louis, MO, last night, September 25, 2013, at which time ESTRADA-Zavala asked for **MEJIA-Chavez's** cell phone number. ESTRADA-Zavala said **MEJIA-CHAVEZ** provided the **TARGET TELEPHONE** to him, which ESTRADA-Zavala subsequently provided to agents. ESTRADA-Zavala stated that **MEJIA-Chavez** was supposed to be working for him on September 26, 2013, mowing grass, but decided to help others with a roofing job.

16. It is anticipated that **MEJIA-Chavez** will continue to utilize the **TARGET TELEPHONE** to further violations of Title 21, USC 841 and 846.

17. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the **TARGET TELEPHONE**, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Sprint's network or with such other reference points as may be reasonably available.

19. Based on my training and experience, I know that Sprint can collect cell-site data about the **TARGET TELEPHONE.**

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property or any wire or electronic communication. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any electronic information (non-content) to obtain the authorized location information, there is reasonably necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2). This warrant does not authorize the interception or seizure of the content of any communications.

22. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's

services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE** outside of daytime hours.

24. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Jarad Harper
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on September 26, 2013.

_____
CLIFFORD J. PROUD
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS

9